**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

PRITCHARD INDUSTRIES, LLC,

        Plaintiff,

vs.

MICHAEL WHITE,

        Defendant.

Civil Action No.

Plaintiff Pritchard Industries, LLC ("Pritchard" or "Plaintiff," or the "Company"), by and through its undersigned counsel, hereby states the following as its Verified Complaint against Defendant Michael White ("White" or Defendant").

### I.      <u>NATURE OF THE ACTION</u>

1. Pritchard brings this action against Defendant for breaching the Restrictive Covenant Agreement ("RCA") he entered with Pritchard as a condition of the sale of ACP Facility Services LLC ("ACP") to Pritchard effective November 24, 2023, and his Employment Agreement with Pritchard dated November 28, 2023 ("Employment Agreement").

2. Prior to ACP's acquisition by Pritchard, Defendant had served as Chief Operating Officer for ACP, and he negotiated the terms of his Employment Agreement and RCA with Pritchard, with the assistance of his personal legal counsel.

3. Following the acquisition, Defendant became Pritchard's Regional Vice President ("RVP") for the Northeast Region, reporting directly to the President of Pritchard. As RVP, Defendant was responsible for client relations, business development, ensuring operational excellence, team management, retention and P&L responsibilities. His primary location of employment was Pritchard's New England offices in Massachusetts.

4.    As a signatory to the RCA, Defendant was and remains contractually bound, for a one-year period following the end of his employment with Pritchard (the "Post-Termination Restricted Period"), to refrain from, among other things, (a) competing with Pritchard in the janitorial and cleaning services business in any geographical or market in which he had a material presence or influence within the last twelve months of his employment with Pritchard, or (b) soliciting Pritchard's customers with whom he transacted business in connection with his relationship with Pritchard.  This one-year Post-Termination Restricted Period is subject to tolling for the period of any violations of the restraints in the RCA.

5.    Following his resignation, Defendant assured Pritchard multiple times that he would honor the restraints set forth in the RCA and not solicit Pritchard's customers during the one-year Post Termination Restricted Period.

6.    However, sometime after voluntarily resigning from his employment with Pritchard on July 11, 2025, Defendant began associating with Compass Facility Services, Inc. ("Compass"), a direct competitor of Pritchard in the janitorial and cleaning services business based in Georgetown, Massachusetts – within the same geographic market in which he worked and for which he had responsibility when he was RVP for Pritchard, and within the one-year Post-Termination Restricted Period.

7.    Even worse, Defendant blatantly violated the non-solicitation restraints of the RCA within the one-year Post-Termination Restricted Period on behalf of Compass.

8.    Specifically, ACP was a vendor of Sodexo Operations, LLC ("Sodexo") for commercial cleaning, janitorial, and related services.  After ACP's acquisition by Pritchard, Pritchard became a vendor of Sodexo for the same services.  White worked closely with Sodexo throughout his employment with ACP and then Pritchard.

9. In or around April 2026, Pritchard learned that a representative of Sodexo contacted White on his cell phone, believing him to still be employed by Pritchard, about commercial cleaning and janitorial services that Pritchard had been performing at the property of a Sodexo customer located in Andover, Massachusetts. Instead of directing Sodexo to Pritchard, to comply with his obligations under the RCA, White arranged to have Compass begin servicing the Andover property. As a result, Sodexo ceased engaging Pritchard to service the Andover property. Pritchard's lost revenues for this one account alone will be approximately $600,000 annually.

10. Moreover, given White's close relationships with Sodexo, developed over the course of his employment with ACP and then Pritchard, it is highly likely that White is steering or attempting to steer Sodexo to Compass for additional work covered by the Services Agreement with Sodexo, threatening irreparable damage to Pritchard's ongoing relationship with Sodexo.

11. Accordingly, Pritchard seeks relief including monetary damages, temporary and permanent injunctive relief, and attorneys' fees and other costs stemming from Defendant's improper actions.

## II.    THE PARTIES

12. Plaintiff Pritchard Industries, LLC ("Pritchard") is a Delaware limited liability company. Its two members are (i) Pritchard Newco, Inc., a Delaware corporation with its principal place of business located in Alpharetta, Georgia, and (ii) and LJ Clean Intermediate, LLC, whose sole member is LJ Clean Holdings II, LLC, whose sole member is LJ Clean Holdings, Inc., a Delaware corporation with its principal place of business located in Alpharetta, Georgia. Therefore, Pritchard is a citizen of the States of Delaware and Georgia.

13. Defendant Michael White is a citizen of the Commonwealth of Massachusetts who, upon information and belief, resides in and is domiciled in Tewksbury, Massachusetts.

3

### III.    JURISDICTION AND VENUE

14.    This Court has original jurisdiction over this case pursuant to 28 U.S.C. § 1332, as this is a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and it is between citizens of different states.  Specifically, as noted above, Pritchard is a citizen of the States of Delaware and Georgia based on the citizenships of its two corporate parents, Pritchard Newco, Inc. and LJ Clean Holdings, Inc.  As also noted above, Defendant is a citizen of the Commonwealth of Massachusetts.

15.    Venue is proper in this District under 28 U.S.C. § 1391(b) because: Defendant resides in this District; a substantial part of the events or omissions giving rise to the claims in this case occurred in this District; and Defendant agreed, in his Employment Agreement with Pritchard, that all judicial proceedings brought against any party arising out of or relating to his Employment Agreement and any obligations or liabilities thereunder shall be brought and maintained in the federal or state courts in Massachusetts.

### IV.    FACTS COMMON TO ALL COUNTS

**A.    The Nature of Pritchard's Business**

16.    Pritchard was established in 1986 and provides comprehensive and high-quality facility services and commercial cleaning, maintenance, and engineering solutions across a wide range of industries. Pritchard was initially established as a janitorial company in New York City, New York and through a series of acquisitions grew its footprint from Maine to Florida, and westward to Texas and up to Ohio.

17.    Pritchard's services range from routine janitorial services to advanced disinfection, eco-friendly cleaning solutions, advanced facility services such as maintenance and electrical care of heating, ventilation, and air conditioning systems; snow removal; and specialized facility care.

18.     Pritchard caters to a diverse range of commercial sectors, including but not limited to corporate offices, healthcare facilities, educational institutions, laboratory and research centers, and industrial and manufacturing facilities.

19.     Pritchard has a strong presence in various regions, including Massachusetts, based on strong local and personal relationships. Given the low barrier to entry, the regional landscapes are very competitive.

20.     Much of Pritchard's success derives from its ongoing customer relationships and retention. Pritchard invests significant time and effort into developing and maintaining those relationships and relies on repeat business as part of its business model. Pritchard maintains extraordinary goodwill with its customers.

**B.     White Joins Pritchard as Part of an Equity Purchase Agreement**

21.     On November 24, 2023, Pritchard entered into an Equity Purchase Agreement ("EPA") with the owners of ACP, a Delaware limited liability company engaged in the commercial janitorial services industry.

22.     At the time of the acquisition, White was serving as ACP's Chief Operating Officer ("COO").

23.     As a material condition of the EPA by which Pritchard acquired ACP, Pritchard agreed to employ White in the senior position of RVP, reporting directly to Pritchard's President, pursuant to the Employment Agreement and the RCA incorporated into the Employment Agreement.

24.     As RVP for Pritchard, White was critically important to preserving the value of the ACP goodwill that Pritchard purchased when it acquired ACP by maintaining and growing Pritchard's sales and business in Massachusetts, Connecticut, New Hampshire, Rhode Island, and Vermont.  As COO for ACP, White had extensive dealings with ACP's clients and customers.

Thus, he remained critical in securing and managing those relationships, and developing new relationships on behalf of Pritchard, after Pritchard acquired ACP.

25.   Consistent with his prior duties as COO for ACP, following ACP's acquisition by Pritchard, White was responsible for, among other things, growing the business through setting appointments with new prospects; actively networking to develop, build, and sustain robust professional relationships with prospects and potential customers; identifying, developing, and nurturing relationships with business owners and other potential customers; managing and growing the sales pipeline; and maintaining customer goodwill.  These relationships and customer goodwill were precisely what Pritchard purchased when it acquired ACP.

26.   Additionally, as COO of ACP, White had full access to and knowledge of all bids, contracts, and current client contacts for the ACP business.  After Pritchard acquired ACP, and while White was employed by Pritchard, Pritchard entrusted White with continued access to this information, along with access to additional confidential information about Pritchard's business, including information about Pritchard's pricing, business development strategies, services offered, and general "know-how" relating to Pritchard's business operations.

**C.   White's Employment Agreement with Pritchard**

27.   White entered into his Employment Agreement with Pritchard effective November 28, 2023.  A true and correct copy of his Employment Agreement is attached hereto as **Exhibit A**.

28.   The Employment Agreement expressly provides that it was made pursuant to the Equity Purchase Agreement by which Pritchard acquired ACP.  Employment Agreement at 1 (first Whereas clause).

29.   Pursuant to the Employment Agreement, White was appointed as Pritchard's RVP, reporting directly to Pritchard's President.  Employment Agreement, §2(a).

30. White was represented by legal counsel throughout the preparation of the Employment Agreement. Employment Agreement, §§8(i), 8(o). In it, White acknowledged that "[e]ach party has cooperated in the drafting, negotiation and preparation of this Agreement." Employment Agreement, §8(o). White further acknowledged that he "has read and understands this Agreement, is entering into it freely and voluntarily, and has been advised to seek counsel prior to entering into this Agreement and has had ample opportunity to do so." Id.

**D.     White's RCA with Pritchard**

31. As a condition of entering into the Employment Agreement and in consideration of White's continued employment with Pritchard, White entered into the RCA with Pritchard annexed to his Employment Agreement. RCA §7. A true and correct copy of the RCA is attached hereto as **Exhibit B.**

32. To protect the value of Pritchard's goodwill – including the goodwill that Pritchard purchased when it acquired ACP – and Pritchard's confidential business information to which White had access because of his positions with ACP and then Pritchard, the RCA contains confidentiality, non-competition, and non-solicitation covenants.

*(i)     Confidentiality covenant in the RCA*

33. Specifically, in Section 1(a) of the RCA, White acknowledged that his employment with Pritchard would bring him into close contact with confidential and proprietary information of the "Company Group."[1]  Accordingly, White agreed "at all times during the term of my employment with the Company and thereafter, to hold in confidence, and not to use, except for the benefit of the Company Group, or to disclose to any person, firm, corporation, or other entity without written authorization of the Company, any Confidential Information that I obtain or

---

[1] "Company Group" is defined in the RCA to include Pritchard, LJ Pritchard Topco Holdings, LLC, and their respective direct and indirect subsidiaries. RCA, §1(a).

create," and "not to make copies of such Confidential Information except as authorized by the Company." RCA, §1(a).

34.    The RCA defines "Confidential information" to include, among other things, "any and all non-public information that relates to the actual or anticipated business and/or products, research, or development of the Company, or to the Company's technical data, trade secrets, or know-how, including, but not limited to, research, product plans, or other information regarding the Company's products or services and markets, customer lists, and customers (including, but not limited to, customers of the Company on whom I called or with whom I may become acquainted during the term of my employment."  RCA, §1(b).

### (ii)    Non-competition covenant in the RCA

35.    Moreover, Section 4(a) of the RCA provides:

**Non-Competition**. In order to protect the Company's legitimate business interests in its Confidential Information and trade secrets and goodwill (which I acknowledge and agree cannot be adequately protected through alternative means), I agree that, during the period of my employment with the Company (the "Employment Period") and the Post-Termination Restricted Period (as defined below), I shall not, directly or indirectly, individually or on behalf of any person, company, enterprise, or entity, or as a sole proprietor, partner, stockholder, director, officer, principal, agent, or executive, or in any other similar capacity, engage in any Competitive Activities (as defined below) in any geographical or market area in which I, during any time within the last twelve (12) months of employment, provided products or services or had a material presence or influence.

RCA, §4(a).

36.    The RCA defines "Competitive Activities" to include "engaging the same or similar services for a Competitive Business that I provided to the Company Group at any time during the last twelve (12) months of my employment with the Company Group."  RCA, §5(b).

37.    Competitive Business," in turn, means "the business of janitorial and cleaning services and janitorial products distribution."  RCA, §5(c).

38.     The RCA defines the "Post-Termination Restricted Period" as "the period commencing on the date my employment with the Company terminates for any reason and ending on the first (1st) anniversary of such termination date."  RCA, §5(f).

39.     During the most recent twelve months of his employment with Pritchard, White provided services and had a material presence in Massachusetts, Connecticut, New Hampshire, Rhode Island, and Vermont.

40.     White resigned from his employment with Pritchard effective July 11, 2025.

41.     Thus, the non-competition covenant of the RCA prohibits White from, directly or indirectly, competing with Pritchard in the business of janitorial and cleaning services and janitorial products distribution for the Post-Termination Restricted Period, anywhere within Massachusetts, Rhode Island, New Hampshire, Vermont and Connecticut.

### (iii)     Non-solicitation covenant in the RCA

42.     Further, Section 4(b) of the RCA provides that, "[d]uring the Employment Period and the Post-Termination Restricted Period, I shall not, directly or indirectly for my own account or for the account of any other individual or entity, engage in Interfering Activities (as defined below."  RCA, §4(b).

43.     The RCA defines "Interfering Activities," in pertinent part, to include "encouraging, soliciting, or inducing, or in any manner attempting to encourage, solicit, or induce, any Business Relation to cease doing business with or reduce the amount of business conducted with the Company Group, or in any way interfering with the relationship between any such Business Relation and the Company Group."  RCA, §5(d)(iii).

44.     The RCA defines "Business Relation," in turn as

> any current or prospective client, customer, licensee, supplier, merger or acquisition target, potential joint venture partner or other business relation of the Company

Group, or any such relation that was a client, customer, licensee or other business relation within the prior twelve (12) month period, in each case, with whom I transacted business or whose identity became known to me in connection with my relationship with, or employment by, the Company.

RCA, §5(a).

46.     Thus, the non-solicitation covenant of the RCA prohibits White, for the period July 11, 2025, to July 11, 2026, inter alia, from encouraging, soliciting, or inducing any current or prospective client or customer of Pritchard with whom White transacted business at Pritchard to cease or reduce the amount of business it conducted with Pritchard.

### (iv)     White expressly acknowledged the reasonableness of the covenants in the RCA and the appropriateness of injunctive relief

46.     In the RCA, White expressly acknowledged the reasonableness of the restrictive covenants set forth therein.  As he acknowledged in Section 7:

> **Reasonableness of Restrictions.** I acknowledge and recognize the highly competitive nature of the Company's business, that access to Confidential Information renders me special and unique within the Company's industry, and that I will have the opportunity to develop substantial relationships with existing and prospective clients, accounts, customers, consultants, contractors, investors, and strategic partners of the Company Group during the course of and as a result of my employment with the Company. In light of the foregoing, I recognize and acknowledge that the restrictions and limitations set forth in this Restrictive Covenant Agreement are reasonable and valid in geographical and temporal scope and in all other respects and are essential to protect the value of the business and assets of the Company Group, and that the Company would not enter into the Employment Agreement with me but for my agreements herein. I further acknowledge that the restrictions and limitations set forth in this Restrictive Covenant Agreement will not materially interfere with my ability to earn a living following the termination of my employment with the Company and that my ability to earn a livelihood without violating such restrictions is a material condition to my employment with the Company.

RCA, §7.

47.     Further, White acknowledged that any breach or threatened breach of the RCA would warrant injunctive relief.  Specifically, as he acknowledged in Section 9:

10

> **Injunctive Relief.** I expressly acknowledge that any breach or threatened breach of any of the terms and/or conditions set forth in this Restrictive Covenant Agreement may result in substantial, continuing, and irreparable injury to the members of the Company Group. Therefore, I hereby agree that, in addition to any other remedy that may be available to the Company, any member of the Company Group shall be entitled to seek injunctive relief, specific performance, or other equitable relief by a court of appropriate jurisdiction in the event of any breach or threatened breach of the terms of this Restrictive Covenant Agreement without the necessity of proving irreparable harm or injury as a result of such breach or threatened breach.

RCA, §9.

48.     Notably, White further acknowledged and agreed that "the Post-Termination Restricted Period shall be tolled during any period of violation of any of the covenants in Section 4 hereof and during any other period required for litigation during which the Company or any other member of the Company Group seeks to enforce such covenants against me if it is ultimately determined that I was in breach of such covenants." RCA, §9.

## E.     White Resigns from his Employment with Pritchard to Join a Direct Competitor, in Violation of the RCA

49.     White resigned from his employment with Pritchard on July 11, 2025. Thereafter, White began an association with Compass.

50.     Compass is engaged in the business of janitorial and cleaning services and is based in Georgetown, Massachusetts – unquestionably within the same geographic market in which White worked and for which he had responsibility while he was RVP for Pritchard.

51.     Thus, by associating with Compass within the one-year Post-Termination Restricted Period, White violated and is continuing to violate the non-competition covenant of the RCA. RCA, §§4(a), 5(b), 5(c), 5(f).

## F.     White Induces Pritchard Not to Take Action to Prevent Him from Joining Compass

52.     In or around January or February 2026, White spoke with Steven Agnew ("Agnew"), Pritchard's Senior Vice President for Operations, to discuss White's plans to join

Compass.  In this conversation, White assured Agnew that he would not compete with Pritchard or solicit Pritchard's customers during the one-year Post-Termination Restricted Period.

53.    White then spoke with Christopher Nowak ("Nowak"), Senior Vice President - Human Resources and General Counsel for Pritchard, in February 2026.  In this conversation, White reiterated to Nowak that he would not compete with Pritchard or solicit Pritchard's customers on behalf of Compass during the one-year Post-Termination Restricted Period.

54.    In reliance on White's assurances to Pritchard's senior executives, Agnew and Nowak, Pritchard saw no reason to take steps to prevent White  from accepting employment with Compass during the one-year Post-Termination Restricted Period.

**G.    Despite White's Assurances, White Steers a Pritchard Customer to Compass**

55.    Despite White's assurances, Pritchard has recently come to learn that White has also been violating the non-solicitation restraints of the RCA on behalf of Compass.

56.    Specifically, ACP was a party to a Services Agreement with Sodexo dated June 1, 2021, pursuant to which it provided commercial cleaning, janitorial, and related services to various of Sodexo's business partners and customers.

57.    White was ACP's signatory to the Services Agreement with Sodexo in his capacity as ACP's COO, and he worked closely with Sodexo during his employment with ACP and then Pritchard.

58.    Following Pritchard's acquisition of ACP, Pritchard and its subsidiaries succeeded to ACP's rights and obligations under the Services Agreement with Sodexo, and Pritchard became responsible for providing the services required under the Services Agreement with Sodexo.

59.    In or around April 2026, Pritchard learned that a representative of Sodexo had contacted White on his cell phone, believing him to still be employed by Pritchard, about

commercial cleaning and janitorial services that Pritchard had been performing pursuant to the Sodexo Services Agreement at a property located in Andover, Massachusetts.

60.     However, instead of directing Sodexo to Pritchard, White arranged to have Compass, with whom White is associated, begin servicing the Andover property.  As a result, Sodexo stopped using Pritchard to service the Andover property.  Pritchard's lost annual revenues for this one account alone will be approximately $600,000 annually.

61.     White's conduct in steering Sodexo to Compass for purposes of servicing the Andover property occurred within the one-year Post-Termination Restricted Period.  Therefore, it violated the non-solicitation covenant of the RCA.  RCA, §§4(b), 5(a), 5(d)(iii).

62.     Moreover, White used information he learned about the Sodexo relationship during his employment with ACP and Pritchard to steer Sodexo to Compass for purposes of servicing the Andover property, which falls within the scope of "Confidential Information" under the RCA. RCA, §1(b).  Accordingly, White also violated the confidentiality covenant of the RCA.  RCA, §1(a).

63.     Moreover, given White's close relationships with Sodexo developed over the course of his employment with ACP and then Pritchard, it is highly likely that White is steering or attempting to steer Sodexo to Compass for additional work covered by the Services Agreement with Sodexo, thereby risking irreparable damage to Pritchard's ongoing relationship with Sodexo.

64.     Accordingly, Pritchard seeks relief including monetary damages, temporary and permanent injunctive relief, and attorneys' fees and other costs stemming from Defendant's improper actions.

## COUNT I

### (Breach of Contract – Non-Competition Covenant of the RCA

65.     Plaintiff realleges and incorporates by reference herein the allegations set forth in the foregoing Paragraphs of this Complaint.

66.     Pursuant to an Equity Purchase Agreement by which Pritchard acquired ACP, White entered into an Employment Agreement with Pritchard dated November 28, 2023.

67.     As a condition of the Employment Agreement and his continued employment with Pritchard, White agreed to, and did, enter into the RCA with Pritchard annexed to the Employment Agreement.

68.     The RCA, among other things, contains a non-competition covenant.  RCA, §4(a).

69.     In pertinent part, the non-competition covenant of the RCA prohibits White from competing with Pritchard in the business of janitorial and cleaning services and janitorial products distribution for the one-year Post-Termination Restricted Period, anywhere within Massachusetts, Connecticut, New Hampshire, Rhode Island, and Vermont.  RCA, §4(a), 5(b), 5(c), 5(f).

70.     The Employment Agreement and RCA are valid and enforceable contracts between Pritchard and White and are supported by adequate consideration.

71.     Pritchard performed its obligations owed to White under the Employment Agreement and RCA, including, among other things, by continuously employing White in the senior position of RVP for Pritchard until his resignation on July 11, 2025, and providing and entrusting White with access to Pritchard's Confidential Information about Pritchard's business and customers.

72.     White began an association with Compass as a consultant or otherwise within the Post-Termination Restricted Period.

73. Compass is engaged in the business of janitorial and cleaning services and is based in Georgetown, Massachusetts – within the same geographic market in which White worked and for which he had responsibility while he was RVP for Pritchard.

74. Thus, by associating with Compass within the one-year Post-Termination Restricted Period, White violated and is continuing to violate the non-competition covenant of the RCA.

75. As a direct and proximate result of White's breach of his non-competition covenant, Pritchard has suffered and will continue to suffer damages in such amount as may be proven at trial.

76. Moreover, because White has violated his non-competition covenant, the Court should toll the Post-Termination Restricted Period for the period of White's violations of his non-competition covenant, and for the pendency of this litigation, pursuant to Section 9 of the RCA.

## COUNT II

### (Breach of Contract – Non-Solicitation and Confidentiality Covenants of the RCA)

77. Plaintiff realleges and incorporates by reference herein the allegations set forth in the foregoing Paragraphs of this Complaint.

78. The RCA, among other things, also contains non-solicitation and confidentiality covenants. RCA, §§1(a), 1(b), 4(b).

79. In pertinent part, the non-solicitation covenant of the RCA prohibits White, for the one-year Post-Termination Restricted Period, inter alia, from encouraging, soliciting, or inducing any current or prospective client or customer of Pritchard with whom White transacted business at Pritchard to cease or reduce the amount of business it conducted with Pritchard. RCA, §§4(b), 5(a), 5(d)(iii).

15

80.    Moreover, in pertinent part, the confidentiality covenant of the RCA prohibits White from using or disclosing any of Pritchard's "Confidential Information" – defined to include "other information regarding the Company's products or services and markets, customer lists, and customers (including, but not limited to, customers of the Company on whom I called or with whom I may become acquainted during the term of my employment."  RCA, §§1(a), 1(b).

81.    White violated the non-solicitation covenant of the RCA by causing Pritchard's customer, Sodexo, to cease engaging Pritchard for commercial cleaning and janitorial services that Pritchard had been performing at a property located in Andover, Massachusetts, and directing those services instead to Compass.

82.    Moreover, in violation of the confidentiality covenant of the RCA, White used the information he learned about this customer during his employment with Pritchard to steer this customer to Compass to provide the exact services for which the customer was originally seeking from Pritchard.

83.    As a result of White's conduct, Pritchard no longer provides commercial cleaning and janitorial services for Sodexo at the Andover property.

84.    As a direct and proximate result of White's breach of his non-solicitation and confidentiality covenants in the RCA, Pritchard has suffered and will continue to suffer damages in such amount as may be proven at trial.

85.    Moreover, White's actions evidence a plan to continue to use Pritchard's former high-level positions within ACP and Pritchard, and his knowledge and relationships with Pritchard's customers, to solicit Pritchard's customers on Compass's behalf, to Pritchard's competitive disadvantage and detriment.  These actions pose a serious risk of irreparable harm to Pritchard's goodwill and customer relationships – including its relationship with Sodexo – and its other

legitimate business interests, for which Pritchard is entitled to a temporary restraining order, followed by a preliminary and then permanent injunction.

86.     Further, because White has violated his non-solicitation covenant, the Court should toll the Post-Termination Restricted Period for the period of White's violations of his non-solicitation covenant, and for the pendency of this litigation, pursuant to Section 9 of the RCA.

## COUNT III

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

87.     Plaintiff realleges and incorporates by reference herein the allegations set forth in the foregoing Paragraphs of this Complaint.

88.     As noted above, Pritchard and White are parties to the Employment Agreement and the RCA annexed to the Employment Agreement.

89.     The covenant of good faith and fair dealing is implied in all contracts.

90.     Under the implied covenant of good faith and fair dealing, White was prohibited from taking any actions that would have the effect of destroying or injuring Pritchard to receive the fruits of its agreements with White, including the Employment Agreement and RCA.

91.     White violated the implied covenant of good faith and fair dealing in numerous ways, described more fully above, including, among other things, by:  resigning his employment with Pritchard to work for a direct competitor in the janitorial and cleaning services business in the same geographic market that Pritchard serviced while he was RVP for Pritchard; falsely assuring Pritchard that he would not solicit Pritchard's customers on behalf of Compass, at least during the Post-Termination Restricted Period; despite such assurances, causing Sodexo to start using Compass and cease using Pritchard for commercial cleaning and janitorial services at a property

in Andover, Massachusetts;  and other actions designed to damage Pritchard's goodwill and customer relationships.

92.    As a direct and proximate result of White's breach of the implied covenant of good faith and fair dealing, Pritchard has suffered and will continue to suffer damages in such amount as may be proven at trial.

93.    Moreover, White's actions evidence a plan to continue to use Pritchard's former high-level positions within ACP and Pritchard, and his knowledge and relationships with Pritchard's customers, to solicit Pritchard's customers on Compass's behalf, to Pritchard's competitive disadvantage and detriment.  These actions pose a serious risk of irreparable harm to Pritchard's goodwill and customer relationships – including its relationship with Sodexo – and its other legitimate business interests, for which Pritchard is entitled to a temporary restraining order, followed by a preliminary and then permanent injunction.

## COUNT IV

### (Tortious Interference with Economic Relationship)

94.    Plaintiff realleges and incorporates by reference herein the allegations set forth in the foregoing Paragraphs of this Complaint.

95.    Pritchard had an existing and reasonable expectation of economic benefit from its customers, including Sodexo.

96.    White had knowledge of Pritchard's expectancy.

97.    White intentionally interfered with Plaintiff's expectancy by diverting to Compass commercial cleaning services that Pritchard had performed at a property in Andover, Massachusetts, pursuant to the Services Agreement with Sodexo.

18

98.     But for White's interference, Pritchard had a reasonable probability of receiving the anticipated economic benefit from the cleaning services Pritchard provided at the Andover location pursuant to the Services Agreement with Sodexo.

99.     As detailed above, White interfered with Pritchard's relationship with Sodexo using improper means, including, but not limited to, by misleading Pritchard into believing that White would not be going after Pritchard's customers during the Post-Termination Restricted Period – thereby inducing Pritchard not to take action to enforce its rights under the RCA to prevent White from continuing his employment with Pritchard – and by using Pritchard's Confidential Information to steer Sodexo to Compass to provide commercial cleaning and janitorial services at the Andover property.

100.    As a direct and proximate result of White's interference, Pritchard has suffered and will continue to suffer damages in such amount as may be proven at trial.

### Count V

### (Unfair and Deceptive Trade Practices (Mass. G.L. c. 93A, § 11))

101.    Plaintiff realleges and incorporates by reference herein the allegations set forth in the foregoing Paragraphs of this Complaint.

102.    White's Employment Agreement and RCA with Pritchard are governed by and construed in accordance with the laws of the Commonwealth of Massachusetts, without regard to conflict of laws principles thereof.  Employment Agreement, §8(a); RCA, §11(a).

103.     As set forth more fully above, White engaged in unfair and deceptive trade practices, in violation of Mass. G.L. c. 93A, § 11, by, among other things, misleading Pritchard into believing that White would honor the RCA and not soliciting Pritchard's customers during the Post-Termination Restricted Period – thereby inducing Pritchard not to take action to enforce

its rights under the RCA to prevent White from continuing his association with Compass – and by using Pritchard's Confidential Information to improperly and deceptively divert Sodexo away from Pritchard and to Compass to perform commercial cleaning and janitorial services at the Andover property.

104.	As a direct and proximate result of White's unfair and deceptive trade practices, Pritchard has suffered and will continue to suffer damages in such amount as may be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Pritchard demands judgment in its favor and against White, and requests that the Court order relief as follows:

1.	Granting a temporary restraining order, followed by a preliminary and permanent injunction, restraining White from (a) directly or indirectly, violating his non-competition and non-solicitation covenants contained in the RCA, see RCA, §§4(a), 4(b), 5(a), 5(d)(iii), for the duration of the one-year Post-Termination Restricted Period, as tolled in accordance with RCA, §9 (the "Tolling Period"); (b) competing in any capacity with Pritchard or soliciting Pritchard's customers during the Tolling Period; and (c) disclosing or using Pritchard's Confidential Information in violation of the RCA, see RCA, §§ RCA, §§1(a), 1(b);

2.	Awarding compensatory and consequential damages in favor of Pritchard, including but not limited to an amount equal to its present and future damages and costs incurred as a result of White's actions;

3.	Awarding punitive damages in favor of Pritchard, together with all other monetary damages permitted by law, in an amount to be determined;

4.       Awarding Pritchard its reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest; and

5.       Granting such other and further relief as the Court may deem just and proper.

Dated: May 13, 2026

Respectfully submitted,

PRITCHARD INDUSTRIES, LLC

By its attorneys,

*/s/ Mark D. Pomfret*

Mark D. Pomfret (BBO# 561925)
K&L GATES,  LLP
1 Congress Street
Suite 2900
Boston, MA 02214-2023
Telephone: (617) 261-3100
Facsimile:(617) 261-3175
mark.pomfret@klgates.com

and

George P. Barbatsuly (*pro hac vice forthcoming*)
K&L GATES,  LLP
One Newark Center
10th Floor
Newark, NJ 07102
Telephone: (973) 848-4000
Facsimile:(973) 556-1584
george.barbatsuly@klgates.com

# VERIFICATION

STATE OF NEW JERSEY )
                    ) ss.
SOMERSET COUNTY     )

I, Christopher Nowak, being first duly sworn on oath, depose and state that I am the Senior Vice President—Human Resources & General Counsel for Pritchard Industries, LLC, and I am authorized to make this Verification on behalf of Plaintiff in the above-captioned action. I have read the foregoing Verified Complaint and the statements contained herein are true and accurate to the best of my own personal knowledge, except as to those matters stated herein upon information and belief, and as to those matters, I believe them to be true.

_____
Christopher Nowak

Subscribed and sworn to before me
this 13 day of May, 2026.

Niesha R. Gibbs
An Attorney At Law of the State of NJ
Notary Public, State of New Jersey
My Commission N/A

22